**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**                    **17-cr-6017-CJS-JWF**

         **v.**                                   **NOTICE OF MOTION**

**RICHARD WILBERN,**
                  **Defendant.**

_____

| | |
|---|---|
| **MOTION BY**: | Anne M. Burger, Assistant Federal Public Defender, Attorney for Richard Leon Wilbern. |
| **DATE, TIME & PLACE**: | October 23, 2018, at 10:00 a.m., before the Honorable Jonathan W. Feldman, U.S. Courthouse, Rochester, New York. |
| **SUPPORTING PAPERS**: | Affirmation of Anne M. Burger, affirmed on July 31, 2018, the attachments hereto, and all prior proceedings had herein. |
| **RELIEF REQUESTED**: | An Order granting intradistrict transfer of the case for trial. |

Dated:  July 31, 2018
        Rochester, New York

                                /s/Anne M. Burger_____
                                Anne M. Burger
                                Assistant Federal Public Defender
                                28 East Main Street, Suite 400
                                Rochester, New York 14614
                                585-263-6201
                                anne_burger@fd.org
                                Attorney for Richard Leon Wilbern

TO:   Douglas Gregory, AUSA
       Joel L. Violanti, AUSA
       Paul C. Parisi, AUSA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**               **17-cr-6017-CJS-JWF**

                    **v.**                              **AFFIRMATION**

**RICHARD LEON WILBERN,**

                              **Defendant.**

_____

Anne M. Burger, Assistant Federal Public Defender for the Western District of New York, affirms as follows:

1.     I am an attorney licensed to practice law in the State of New York and the United States District Court for the Western District of New York, and I represent Richard Leon Wilbern.

2.     I am familiar with this case by reasons of my investigation of this matter, conversations with my client and others, and my review of the discovery material provided to date by the government.

3.     This affirmation is submitted in support of the various forms of relief requested herein, and is based upon the facts as I know them, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the United States Constitution, and other pertinent statutes and law.

PRELIMINARY STATEMENT

4.      Richard Wilbern is charged in a two count indictment in the Western District of New York, Rochester division, in connection with one of the area's most infamous crimes, the 2003 Xerox Federal Credit Union robbery where one bank patron was killed and another seriously injured. The case has received significant and almost continuous media attention since 2003. As demonstrated by the attached exhibit limited to an array of printed media coverage from one local news provider, the case has drawn significant negative attention and undoubtedly will receive more through the time of trial. *See* Exhibit A.

5.      Pursuant to FED.R.CRIM.P. 18 and the Fifth and Sixth Amendments to the United States Constitution, the defense moves for an intradistrict transfer to the Buffalo division of the Western District of New York for trial. The defense makes this request because of the following: 1) the significant and nearly continuous negative media coverage in the case since 2003, 2) the fact that this media attention is uniquely centered on the Rochester area, as opposed to the Buffalo division of the district, and 3) the likely impact on jury selection of ties between venire members in the Rochester area and the Xerox Corporation, whose Webster campus was the site of the crime and employed thousands of workers who were subjected to a lockdown for hours following the robbery. For all of these reasons, the Court should order an intradistrict transfer of the case so that it may be tried in the Buffalo division of the Western District of New York. In further

3

support of the defense's motion, attached are the results of a survey conducted by the defense's retained venue expert, Dr. Margaret Bull Kovera et al. *See* Exhibit B. Dr. Kovera's *curriculum vitae* is attached as Exhibit C. The survey instrument is attached as Exhibit D. The data gleaned from the venire survey supports the defense's request for an intradistrict transfer.

**Standard**

6.      The Sixth Amendment guarantees the accused the right to trial "by an impartial jury of the state and district wherein the crime shall have been committed." *See also* U.S. Const., Art. III, §2, cl. 3. Notably, this provision does not preclude transfer of a case to a different location at the defendant's request if he will not receive a fair trial due to extraordinary and negative local sentiment. *United States v. Skilling*, 561 U.S. 358 (2010). Where the community from which jurors are selected is sufficiently impacted by negative publicity or the crime itself, or some combination of the two, a presumption of prejudice exists such that voir dire is ineffective in securing a fair and impartial jury for a defendant. *See Sheppard v. Maxwell*, 384 U.S. 333, 362-62 (1966); *Estes v. Texas*, 381 U.S. 532, 550-51 (1965); *Rideau v. Louisiana*, 373 U.S. 723, 726-27 (1963).

7.      In contrast to venue, there is no constitutional right to trial in a particular division of a judicial district. *Franklin v. United States*, 384 F.2d 377, 378 (5th Cir.1967), cert. denied, 390 U.S. 954 (1968). The venue provision of the sixth

amendment provides only for trial in the judicial district where the crime was committed. Federal Rule of Criminal Procedure 18 governs intradistrict transfers:

> [u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

FED.R.CRIM.P. 18.

8.     Under Western District of New York Local Rule of Criminal Procedure 7, "each criminal case is assigned to a Judge in either Buffalo ... or Rochester," and "[t]he assignment within these areas shall ordinarily be by random selection." L.R. Crim. P. 7. The Rule also provides that a court "may transfer a case within a district 'sua sponte' and a party may file a motion requesting such a transfer." *Id.*

## Argument

9.     Within minutes of the Xerox Federal Credit Union robbery, the Monroe County area was deluged with news coverage relating to the crime, the ensuing man-hunt and the on-going investigative efforts of the police over the following 13 years prior to Mr. Wilbern's arrest. Attached as Exhibit A are nearly 60 articles ranging from in-depth coverage of the robbery to unrelated, out-of-context reminders of the unsolved. These articles represent *only* the coverage of one media outlet: the Democrat and Chronicle. Due to the volume of local coverage over the

last 15 years, counsel did not undertake a comprehensive collection of local coverage
to include all print, television and internet coverage for purposes of this motion.

10.    In addition to the volume of coverage, since Mr. Wilbern's arrest the
media has described him and his life in only the most negative terms. For example,
on October 2, 2016, the Democrat and Chronicle ran a lengthy front page article
titled "A Life in Pieces" displaying Mr. Wilbern's booking photograph. *See* Exhibit A.
The article described Mr. Wilbern in purely negative terms as a drifter, a failed
businessman and a man whose life was "shrouded in mystery." *Id*. This article was
but one of many negative stories reported in local media about Mr. Wilbern. In
addition to being consistently portrayed in a negative light, local media has
repeatedly displayed images of Mr. Wilbern either by way of booking photographs or
photographs of him in jail garb and handcuffs. *Id*. In addition, the media accounts
have provided images of the perpetrator depicted in surveillance footage. Because of
the prevalence of these images in local media, the reality is that the venire in the
Rochester area have already been tacitly invited to form an opinion as to whether
Mr. Wilbern's booking and custody images resemble that of the perpetrator of the
robbery.

11.    In contrast, it appears that the Buffalo News only once reported on the
Xerox robbery, in March 2016, following the government's press conference at which
time it was announced that the suspect was believed to be in the Buffalo or Niagara

Falls area. *See* Exhibit E, Phil Fairbanks, *Buffalo*, *Falls are focus of search for suspect in deadly '03 robbery*, Buffalo News, March 22, 2016.

12.     The intense media coverage of the case appears to be local to the Rochester area and its related media outlets. A search in the Buffalo area for media coverage concerning this case has uncovered little, if any, reporting about the crime or Mr. Wilbern's alleged involvement.

13.     In addition to the intense and negative media saturation in the Rochester area, the Rochester venire come with other, equally problematic knowledge and experience based on their direct or indirect connection to Xerox.

14.     As demonstrated by the defense's survey results below, the Rochester venire is far more likely to have been impacted by the crime or to know someone who was impacted by the crime purely because of employment with Xerox, a significant long-term employer in the Rochester area. The robbery here occurred at a Xerox site where the bulk of Xerox's employees have always worked: the Xerox 'campus' in Webster New York. Xerox employees, past and present, and those they associate with are significantly more likely to have had or have heard about other Xerox workers' experiences being detained during the campus-wide lockdown on August 12, 2003, following the robbery. The August 13, 2003, Democrat and Chronicle article titled *Killing shuts down Xerox*, recounts that "[t]housands of Xerox employees who were rushed into safe areas inside their Webster plant were finally allowed to go home up to 11 hours after a robber fatally shot a man and

wounded another Tuesday inside the Xerox Federal Credit Union." *See* Exhibit A, Greg Livadas & Jeffrey Blackwell, *Killing shuts down Xerox,* Democrat and Chron., Aug. 13, 2003 at A1.

15.    The survey results confirm that more than five times as many people living in the Rochester division (52%) remembered the Xerox robbery in 2003 without any other prompts as compared to the Buffalo division (10%). *See* Exhibit B at Table 3. After two further prompts were provided to the remaining survey participants, a total of 62% of the people from the Rochester division remembered the case in comparison with only 24% in Buffalo. *Id*. at Table 6.

16.    This is hardly surprising given that Xerox has been a major employer in the Rochester area for decades. Although the local Xerox workforce has dramatically declined over the last 20 years, 8.3% of Rochester respondents had an employment history with Xerox as compared to only .3% from Buffalo. *Id*. at Table 21. Likewise, 54% of Rochester respondents know someone who was or had been employed by Xerox as compared to only 12.7% in Buffalo. *Id*. at Table 23. The robbery occurred 15 years ago, however more than 10% of the respondents in the Rochester division revealed that they or someone they know was actually affected by law enforcement activity in the case such as the Xerox campus lockdown or roadblocks as compared to only 1.3% of those in the Buffalo division. *See Id*. at Table 20.

17.     The Rochester venire has a high level of direct and indirect connectedness to Xerox. It makes sense, in light of this, that the Rochester venire would be more interested in and aware of the progress of the Xerox investigation and prosecution. This is borne out by the data: only 4.7% of the Buffalo respondents knew that someone had been arrested for the crime as compared to 35.3% of respondents in the Rochester area. *Id.* at Table 7.

18.     The Rochester venire with its significant ties to Xerox will approach jury service with institutional history and knowledge of the workings of the Xerox Corporation and its campus from working at Xerox – likely at the very same Xerox campus where the crime occurred. In addition, these jurors will be connected socially to other Xerox workers and will have received information from them relating to the robbery and/or its aftermath.

19.     The deep ties between the Rochester venire and Xerox and its campus, when coupled with the almost continuous media coverage of the crime for the last 15 years will likely result in the disqualification of significant numbers of potential jurors during jury selection. This problem is avoidable with an intradistrict transfer to Buffalo. Unlike the Rochester area, Buffalo has not been deluged with media coverage of the crime for the last 15 years. Likewise, Xerox has not been a major employer in Buffalo as compared to Rochester. Based on the survey results, Buffalo area jurors are significantly less likely than Rochester jurors to have been affected

by the investigation in the case and will not have the high risk of 'inside knowledge'
of the workings of Xerox and the scene of the crime at the Xerox Webster campus.

20.     Mr. Wilbern is not seeking a change of venue to a different district but
simply a change to the Buffalo division within the same Western District of New
York. Monroe and Erie Counties are the most similar of the counties in the Western
District of New York in terms of population. Monroe County has approximately
747,642 people as compared to the population of Erie County with 925,528, the
division to which the defense seeks an intradistrict transfer. U.S. Census population
estimates of July 1, 2017, available at
https://www.census.gov/quickfacts/fact/dashboard/US/PST045217 (last accessed
July 29, 2018). The distance between the two divisions may be covered by car in a
little over one hour.

21.     In addition to considerations of convenience and prompt
administration, the Court may consider factors such as speedy trial, docket
management, logistics, and pretrial publicity. *See United States v. Lipscomb*, 299
F.3d 303, 340–344 (5th Cir.2002). A district court has "broad discretion in
determining whether [an intradistrict] transfer is warranted." *United States v.
Alvarado*, 647 F.2d 537, 539 (5th Cir. 1981).

22.     Recently District Court Judge Wolford observed that

> the Buffalo Division and the Rochester Division are
> not statutory divisions. Rather, the so-called
> divisions of this District were created by local rule

10

> simply as a matter of administrative convenience.
> Because this District is not separated into
> divisions, trial at any place within the district is
> allowable under the Sixth Amendment and the first
> sentence of Rule 18.

*United States v. Pirk*, 284 F.Supp.3d 398, (W.D.N.Y. 2018) (internal citations

and quotations omitted).

23.     It is also worth noting that the government has, in the past, been

amenable to intradistrict transfers. In *United States v. Nicolo*, 05-CR-6161, a case

assigned in the Rochester division, one of the area's largest employers was impacted

and the defense sought a change of venue due to significant pre-trial publicity.

Under those circumstances, the government opposed a change of venue but agreed

that

> [w]hile a change of venue in this case is not
> warranted, in the event that the Court is
> considering changing venue, the government
> submits that Buffalo would be the most appropriate
> venue. First, pretrial publicity, effect on the
> taxpayers of Greece, and the impact of Kodak
> would not be factors if the trial was moved to
> Buffalo.

*Id.*, Document 84, Government's Response to Defendant John Nicolo's Omnibus

Pretrial Motions at p. 15.

24.     As to the other factors the Court must consider in determining the

motion, Rule 18's "due regard to the convenience of the defendant and the

witnesses" militates in favor of the defense's request. The drive by car between

11

Buffalo and Rochester requires slightly more than one hour. Local witnesses, as a result, would not be significantly inconvenienced any more than Mr. Wilbern's family who mostly reside in the Rochester area and are expected to attend court proceedings.

25.     The rule's second factor -- "due regard to ... the prompt administration of justice" -- in part a literal command that trials comply with the Speedy Trial Act is likewise not damaged by intradistrict transfer. There is no reason to believe that the case may not be tried in a timely fashion if an intradistrict transfer is granted.

26.     The danger of prejudice to Mr. Wilbern if he is tried in Rochester is only likely to increase as trial approaches. In light of these factors, this Court should grant the defendant's motion for an intradistrict transfer to Buffalo in order to preserve Mr. Wilbern's indelible right to a fair trial.

27.     Should this motion be denied, Mr. Wilbern will likely renew the motion at *voir dire* if, as is expected, significant numbers of the venire are disqualified either because they were directly or indirectly affected by the crime by virtue of having a Xerox connection or because of the unrelenting pretrial publicity about the case over the last 15 years. Considerations of judicial economy and expeditious resolution of the case thus support granting intradistrict transfer now.

## CONCLUSION

28.    For the foregoing reasons, the Court should grant the defense's motion

for an intradistrict transfer for trial to Buffalo. Mr. Wilbern respectfully requests

the opportunity to supplement this pleading should the government's response raise

additional issues of fact or law not sufficiently addressed herein.

Dated:  July 31, 2018
        Rochester, New York

                              Respectfully submitted,


                               /s/Anne M. Burger
                              Anne M. Burger
                              Assistant Federal Public Defender
                              28 E. Main Street, Suite 400
                              Rochester, New York 14614
                              585-263-6201
                              anne_burger@fd.org
                              Attorney for Richard Leon Wilbern

TO:   Douglas Gregory, AUSA
      Joel L. Violanti, AUSA
      Paul C. Parisi, AUSA