# EXHIBIT B

2018 WL 6614309
Supreme Court, Kings County, New York.

The PEOPLE of the State of New York,
v.
Abdoulaye SISSOKO, Defendant.

2447-2018
|
Decided on December 5, 2018

**Synopsis**
**Background:** After defendant was charged with possession of a weapon in the second degree, he sought issuance of a judicial subpoena to the office of chief medical examiner (OCME) for non-confirmatory reports related to the contamination of evidence samples, and OCME sought protective order.

The Supreme Court, Kings County, Jane C. Tully, J., held that OCME failed to establish good cause for protective order.

Ordered accordingly.

**Attorneys and Law Firms**

For the Defendant: Clinton Hughes, The Legal Aid Society, DNA Unit, 111 Livingston Street, Brooklyn, NY 11201

For the OCME: Preethi Swamy, Special Counsel, Forensic Laboratories, 421 East 26th Street, New York, NY 10016

**Opinion**

Jane C. Tully, J.

 *1 The defendant seeks the issuance of a judicial subpoena to the Office of Chief Medical Examiner (OCME) for non-confirmatory reports related to the contamination of evidence samples associated with OCME files FB18-02323 and FBS18-01252. The OCME partially opposes the subpoena and seeks a protective order limiting the disclosure of the non-confirmatory reports. The defendant opposes the issuance of the protective order. The OCME filed a reply to the defendant's opposition.

For the reasons set forth below, the OCME's request for a protective order is **DENIED.**

*Background*

The defendant is charged with criminal possession of a weapon in the second degree, and other related charges. It is alleged that the police took sample swabs from the 9mm firearm recovered in this case, and the sample swabs were submitted to the OCME for DNA testing. An abandoned cigarette butt sample was also collected from the defendant and submitted to the OCME for comparison DNA testing. The OCME report for FB-02323, dated June 12, 2018, disclosed that one of the sample swabs from the firearm was contaminated, as the profile of a laboratory member matched one of the individual contributor mixtures found on the swab. The OCME report for FBS18-01252, dated June 22, 2018, indicated it could not determine whether the defendant was included or excluded as a contributor to one of the sample swabs from the firearm. On September 21, 2018, the OCME informed the defendant that a non-confirmatory report had been generated as to the contamination of at least one of the sample swabs from the firearm, and that any corrective action as to the contamination would be contained in the non-confirmatory report.

While the OCME does not oppose disclosure of the non-confirmatory report, the OCME moves pursuant to CPL 240.50 (1) and (2) for a protective order limiting the use of the report to this instant matter. The OCME requests that the Court issue on order directing the defendant not to disseminate the report to any other party, including other counsel within the Legal Aid Society. In arguing for a protective order, the OCME notes that it maintains non-confirmatory reports to document the testing work that does not meet the Department of Forensic Biology's stated standards. The OCME indicates that it direct employees to identify and report non-confirming work, which includes self-reporting. The OCME maintains that the production of the reports allows employees to share their observations and opinions freely to foster an environment of candid admission of errors, which supports quality assurance and control efforts. The OCME argues that the limited disclosure of the non-confirmatory report is warranted because the use of a non-confirmatory report

in an unrelated case could significantly impede the free exchange of ideas because staff would be less willing to fully report any perceived non-conformities. Moreover, the OCME argues that limited disclosure serves the interest of the high level of quality assurance that the OCME maintains.

***2** In opposition, the defendant argues that CPL 240.50 does not contemplate the OCME's request for a protective order in a criminal case in which the defendant seeks information regarding errors in forensic testing performed by the OCME. The defendant maintains that a protective order on a non-confirmatory report, which documents contamination of evidence by laboratory technicians in a criminal case, would have implications on a defendant's constitutional rights under the fifth, six, and fourteenth amendments, especially here, where thousands of the Legal Aid Society's clients are being prosecuted using the forensic evidence developed at the OCME.

### *Protective Order Pursuant to CPL 240.50*

CPL 240.50 (1) and (2) provides that:
The court in which the criminal action is pending may, upon motion of either party, or of any affected person, or upon determination of a motion of either party for an order of discovery, or upon its own initiative, issue a protective order denying, limiting, conditioning, delaying or regulating discovery pursuant to this article for good cause, including constitutional limitations, danger to the integrity of physical evidence or a substantial risk of physical harm, intimidation, economic reprisal, bribery or unjustified annoyance or embarrassment to any person or an adverse effect upon the legitimate needs of law enforcement, including the protection of the confidentiality of informants, or any other factor or set of factors which outweighs the usefulness of the discovery.

An order limiting, conditioning, delaying or regulating discovery may, among other things, require that any material copied or derived therefrom be maintained in the exclusive possession of the attorney for the discovering party and be used for the exclusive purpose of preparing for the defense or prosecution of the criminal action.

To establish "good cause" for a protective order, the OCME does not contend that the non-confirmatory report contain any "confidential information concerning safety, practices or vulnerabilities, the disclosure of which would endanger lives and property , that the disclosure would inhibit candor among persons engaged in efforts undertaken by government agencies to promote public safety or that the disclosure would reveal confidential information regarding criminal activity obtained from law enforcement under a pledge of confidentiality" (*Matter of World Trade Center Bombing Litigation,* 93 N.Y.2d 1, 9, 686 N.Y.S.2d 743, 709 N.E.2d 452 [1999] ). Rather, the OCME argues that employees would be less inclined to report or follow an internal policy, which direct employees to identity and document non-conformities in forensic evidence that may be used to prosecute defendants in criminal cases.

The cases cited by the OCME involve civil litigations, where city agencies invoking the public interest privilege and law enforcement privilege doctrines sought to limit disclosure of documents to foster candid discussion and representation of views among government employees involved in the development of policy (*see eg. One Beekman Place, Inc. v. City of New,* 169 A.D.2d 492, 564 N.Y.S.2d 169 [1st Dept. 1991] [internal memoranda prepared by city planning department came within privilege accorded to confidential communications among public officers and were not subject to discovery in action to annul rezoning of neighborhood]; *Matter of 91st St. Crane Collapse Litig.,* 31 Misc.3d 1207[A], 2010 WL 6428504 [Sup. Ct. New York County 2010][ public interest privilege and law enforcement privilege asserted to prevent disclosure of certain documents]; *Matter of World Trade Ctr. Bombing Litig.,* 93 N.Y.2d 1, 686 N.Y.S.2d 743, 709 N.E.2d 452 [1999] [the port authority was not required to disclose the World Trade Center security-related materials as requested data are shielded by a public interest privilege against disclosure of confidential governmental communications] ). In this matter, the OCME has not asserted any public interest privilege to limit disclosure of the non-confirmatory report, and indeed maintains in its opposition papers that it is not a law enforcement agency. Moreover, the OCME has not cited any support for the contention that disclosure of the non-confirmatory report beyond this matter, would adversely affect its ability to maintain quality assurance and control efforts. The possibility of employees ignoring the OCME's own internal policy to report non-conformities does not constitute "good cause."

**ature *3** This Court finds that the OCME failed to establish "good cause," for the limited disclosure of the non-

conformity report to this matter only, and therefore, the request for a protective order is **DENIED.**

This constitutes the Decision and Order of the Court.

**All Citations**

--- N.Y.S.3d ----, 2018 WL 6614309, 2018 N.Y. Slip Op. 28401

---

**End of Document**　　　　　　　　　© 2019 Thomson Reuters. No claim to original U.S. Government Works.