UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

vs.

RICHARD WILBERN,

           Defendant.

_____

DECISION AND ORDER
17-CR-6017 CJS

## INTRODUCTION

By his filing entitled "Response to the Government's Rule 404 Notice," ECF No. 171, Defendant moves the Court to preclude the government from introducing on its direct case, pursuant to Fed.R. Evid. 404(b), evidence of Defendant's uncharged criminal conduct relating to smuggling, and he further moves the Court "to preclude impeachment of the defendant under Rules 608 and 609," *Id*. at 11. For the reasons stated below, the Defendant's application is granted in its entirety.

## DISCUSSION

**Rules 608 and 609**

According to Defendant, the government has indicated that, should he take the stand in his own defense, it may attempt to impeach him with the following:

    (1)    a 1980 attempted robbery conviction from Monroe County;

    (2)    a 1985 trespass conviction from Virginia;

    (3)    1986 convictions for possession of a sawed off shotgun (felony) and a concealed weapon (misdemeanor) from Virginia;

    (4)    a dismissed assault charge from 1988; and

(5) traveling to Tokyo, Japan between 1997 and 2002 for the purpose of unlawfully smuggling and distributing marijuana for illicit profit.

In that regard, Defendant maintains "as the government has failed to notify the defense of its intentions under Rules 608 and 609, unless the government complies with the defendant's previous request (again, ECF No. 39) by September 24, 2019, the defense hereby moves to preclude the prosecution from impeaching defendant pursuant to these rules," *Id.* at 12. Upon review of the docket, it does not appear that the government has responded or objected to Defendant's application to preclude. In any event, the Court upon its own independent consideration of Rules 608 and 609, precludes the government from questioning Defendant about the convictions and bad acts detailed above.

**404(b)**

In its filing captioned "Notice Pursuant to Rules 404(b) and 405(a) of the Federal Rules of Evidence," the government in pertinent part indicates that it

> intends to elicit testimony that the defendant and two of his associates, Qadir Abdal Haqq and Terrence Levon Bowden (aka Terry Bowden), both of whom are expected to testify at trial, travelled to Tokyo, Japan on numerous occasions between the time period January 1997 through August 2002. The singular purpose of the travel was to smuggle quantities of marijuana into the country of Japan, where it was then distributed to mid-level dealers in Tokyo. After staying for several days waiting to obtain the proceeds, the money was either smuggled out on the plane or sent via FedEx packages back to the United States. For several years, the group was able to generate a significant amount of money by conducting these illegal transactions. The last of these trips occurred in August 2002.
> ***
> The testimony regarding travel to Japan for the purpose of distributing marijuana, which lasted for approximately three or four years and resulted in the accumulation of illicit proceeds, is being offered for a "permissible non-propensity purpose" — that is, the defendant's "motive" to commit the robbery at the Xerox Federal Credit Union. Specifically, the government intends to offer evidence that at the time of the robbery in August 2003, the defendant found himself in dire financial circumstances. This circumstance was, at least in part, a contributing factor to his decision to rob the Xerox

> Federal Credit Union. His financial problems began to significantly deteriorate within two weeks of returning from his 9th trip to Japan (February 10, 2001), when the defendant was informed that he was being fired from his employment at Xerox based upon excessive absenteeism (February 23, 2001). His firing naturally resulted in a loss of significant income and benefits. The defendant then travelled to Japan on five additional occasions, the final trip occurring in August 2002. After that point, the travel to Japan and the resultant flow of illicit income ceased. According to tax records maintained by the Internal Revenue Service, the defendant's adjustable gross income for the years 2001 and 2002 was $15,878 and $11,629 respectively. In 2003, the claimed adjusted gross income was just $3,223. It is the government's position that given the lack of income, either legitimate or illegitimate, when coupled with evidence of defendant's significant financial liabilities, including rent, utilities and general expenditures, not to mention a June 2003 tuition bill for his son at the private Winchendon School in the amount of $23,500, the defendant found himself in a grim financial position. It is entirely reasonable for the government to argue to the jury that this circumstance served as a significant motive for the defendant to rob the Xerox Federal Credit Union in August 2003.
>
> ***
>
> Proof that the defendant was engaged in unlawful activity in Japan is also relevant for a second reason. The government intents to elicit testimony that the defendant wore a black, afro-style wig when he traveled to Japan. According to witness Qadir Abdal Haqq, he defendant wore the wig in order to disguise the fact he had grown "dreadlocks" in his hair. Haqq will testify that he (Haqq) believed that there was a stereotype that people with "dreadlocks" may be more likely suspected of being involved with marijuana, thereby raising the scrutiny of law enforcement. As a result, the defendant began wearing a wig to conceal the dreadlocks when he traveled to Japan. Qadir Abdal Haqq will testify that he has personally observed the defendant wearing the same or similar type of afro-wig that was worn by the defendant inside the Xerox Federal Credit Union at the time of the robbery, ostensibly to cover his dreadlocks and hide his identity.

*Id*. pp. 8–11.

With respect to other crime evidence, as the Court pointed out at the September 30, 2019, proceeding, an initial consideration is whether such evidence comes within the strictures of 404(b). On this point, the Second Circuit in *United States v. Towne*, 870 F.2d 880 (2d Cir.1989), articulated the standard for determining whether evidence is subject to

3

consideration under Rule 404(b) at all. In that regard, evidence of other criminal activity is admissible without reference to Rule 404(b) if the evidence:

> (1) arose out of the same transaction or series of transactions as the charged offense;
>
> (2) [is] inextricably intertwined with the evidence regarding the charged offense; or
>
> (3) is necessary to complete the story of the crime [on] trial.

*Id*. 886, *see also*, *United States. v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) To the extent the government intimated that one of these exceptions applies to the evidence it seeks to introduce, the Court disagrees. Accordingly, the Court now turns to a consideration of the requirements of Rule 404(b).

> As our circuit has explained
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.
>
> ***
>
> "**Since a district court is in the best position to evaluate the evidence and its effect on the jury, its rulings on admissibility under Rule 404(b) will not be overturned on appeal absent a clear showing of abuse of discretion.**" *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir.1992) (citing *United States v. Smith*, 727 F.2d 214, 220 (2d Cir.1984)). An abuse of discretion under Rule 404(b) requires a determination that "the district court acted arbitrarily and irrationally." *Pitre*, 960 F.2d at 1119. "The Second Circuit evaluates Rule 404(b) evidence under an 'inclusionary approach' and allows evidence 'for any purpose other than to show a defendant's criminal propensity.'" *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (quoting *Pitre*, 960 F.2d at 1118). In reviewing whether a district court

4

> properly admitted evidence under Rule 404(b), we consider whether: "(1) the prior acts evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court administered an appropriate limiting instruction." *Id*. at 136 (citing *Huddleston*, 485 U.S. at 691-92, 108 S.Ct. 1496).

*United States v. Brand*, 467 F.3d 179, 196–97 (2d Cir. 2006), (emphasis added). The government maintains that Defendant's participation in the uncharged smuggling operation detailed above is admissible as proof of motive and identity on the trial of the subject indictment.

**Motive**

The government maintains that the other crime evidence it proffers above is admissible on its direct case to establish motive. Specifically, the government contends that evidence of Defendant's participation in the smuggling operation is relevant to show that on August 12, 2003, the date of the credit union robbery, all his sources of income, both legal and illegal had dried up, and that he was essentially in financial distress. Apparently, the government wants to argue that defendant's financial condition somehow motivated his commission of the crime charged in the indictment. However, putting things into perspective, the incident at bar occurred approximately one year after Defendant's smuggling operation ceased in August, 2002. Therefore, it can hardly be that the cessation of Defendant's alleged illegal income stream was the straw that broke the camel's back and precipitated his commission of the crime charged. Significantly, as the government sets forth in the portion of its 404 (b) notice, ECF No. 158, quoted above, Defendant was fired from Xerox in 2001, which resulted in a loss of significant income and benefits, and that his adjusted income for tax years 2001, 2002, and 2003 was only $15,878, $11,629,

and $3,223. Furthermore, the government indicated at the September court appearance that it could show that Defendant's unemployment benefits ran out prior to the credit union robbery and that from 1998 until 2002 Defendant was involved in a bankruptcy proceeding. Clearly, apart from the uncharged criminal conduct that the government seeks to introduce, there is sufficient other evidence that the government can put before the jury, and then argue that the jury should infer that financial distress was a motive for the credit union robbery. Consequently, the Court concludes that while Defendant's participation in the smuggling operation may be relevant on motive, its probative value does not substantially outweighed the danger of its unfair prejudice. In fact, the Court concludes just the opposite. The prejudicial effect of the uncharged conduct outweighs its probative value.

**Identity**

The government also argues that its proffered uncharged conduct is admissible to establish the identity of the person responsible for committing the crime charged. That is, the government seeks to establish the identity of the individual who committed the crime alleged in the indictment by establishing a common *modus operandi* between the smuggling operation and the credit union robbery. *See United States v. Sappe*, 898 F.2d 878, 879–80 (2d Cir. 1990). The Second Circuit has observed that:

> "Other crime evidence may be admitted if the evidence of other crimes is so distinctive that it can be seen as a 'signature' identifying a unique defendant, such as the infamous Jack the Ripper." 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 404.22[5][c], at 404 121 (Joseph M. McLaughlin ed., 2d ed. 2004); *see also United States v. Mills*, 895 F.2d 897, 907 (2d Cir.) ("Even where intent is not in issue, Rule 404(b) permits evidence of similar acts to prove a 'signature crime,' *i.e.*, a modus operandi where the crimes are 'so nearly identical in method as to ear mark them as the handiwork of the accused.'"), *cert. denied*, 495 U.S. 951, 109 L. Ed. 2d 541, 110 S. Ct. 2216 (1990).

6

*United States v. Sampson*, 385 F.3d 183, 192 (2d Cir. 2004). Moreover, while it is true that "[t]he similarity sufficient to admit evidence of past acts to establish a recurring *modus operandi* need not be complete, the characteristics relied must be sufficiently idiosyncratic to permit a fair inference of a pattern's existence." *United States v. Sliker*, 751 F.2d 477, 487 (2d Cir. 1984); *see also United States v. Carlton*, 534 F.3d 97, 101 102 (2d Cir. 2008).

Here, the Court does not agree with the government's position. The fact that individuals engaged in distinct criminal conduct—smuggling and robbery—both wore a black wig in committing their distinct crimes is not so idiosyncratic to allow a jury to infer, based upon that circumstance, that the persons are one and the same. The wearing of a black wig does not amount to a "signature," so as to identify a unique defendant.

## CONCLUSION

Accordingly, Defendant's application, ECF No. 171, is granted and the government is precluded from introducing on its direct case evidence of uncharged criminal conduct relating to smuggling, and is also precluded from impeaching Defendant, pursuant to Rules 608 and 609, for any prior crimes or bad acts.

DATED:   October 7, 2019
         Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge